Lyndahl Earl Sale was convicted for the murder of Connie Powell as a lesser included offense of capital murder. He was sentenced to life imprisonment. He raises two issues on this appeal from that conviction.
 I.
The trial court denied the defendant's pretrial motion requesting discovery of the investigative reports of the Orange Beach Police Department and the Baldwin County Sheriff's Department concerning *Page 863 
this case. The trial court ruled that those records were not discoverable prior to the time the officers took the witness stand. This ruling was proper under Rules 18.1(c)(1) and 18.1(e), A.R.Crim.P.Temp., which provide, with few exceptions none of which are applicable here, that the investigative reports of law enforcement agents are not discoverable. See also Johnson v. State, 555 So.2d 818 (Ala.Cr.App. 1989) (where a police investigator acknowledged at trial that he had prepared a report in connection with the case, defendant's request to examine such report entitled him, at a minimum, to an in camera inspection of the document by the trial court, regardless of whether the investigator actually referred to the document during his direct examination).
The defendant then filed a subpoena duces tecum seeking that same material. Immediately before trial, the defendant requested that the records be produced claiming a constitutional right to that production.
The trial court, which had no prior knowledge of the subpoenas, maintained his prior ruling: "My ruling stands and as I said last Friday, if an officer testifies, then the Defendant is going to have the opportunity to look at his police report and I am going to give the Defendant a reasonable opportunity to review it before he begins his cross-examination."
On appeal, but not at trial, the defendant argues that the reports were needed "to plan trial strategy, and to plan during the trial which points the State's witnesses could testify as to in the Defendant's favor, as well as to which points seemed inconsistent with the State's theories of prosecution." Appellant's brief at 3. At trial, the defendant failed to show that the reports sought were relevant and material to his case. Compare Ex parte Popwell, 516 So.2d 515 (Ala. 1987) (court erred in denying defendant's motion to enforce subpoena duces tecum to produce photographs used in photographic lineup where the State's case depended entirely on the eyewitness testimony of the victim).
 " 'On a motion or application for a subpoena duces tecum at least where its issuance is opposed or the rightfulness thereof assailed, it must be made to appear that the evidence which the books or papers of which production is asked will furnish is competent, and relevant and material to the issues before the court. * * * Facts which will enable the court to judge of the relevancy and materiality of the documents must be stated.' 70 C.J. p. 52, § 39."
Ex parte Hart, 240 Ala. 642, 646, 200 So. 783, 785-86 (1941).
It appears to this Court that the defendant was seeking to use the subpoenas duces tecum as a method of discovery. In Alabama, a subpoena duces tecum does not "embrace discovery as one of its purposes," Ex parte Anniston Personal Loans,Inc., 266 Ala. 356, 359, 96 So.2d 627, 630 (1957); Williams v.State, 383 So.2d 547, 559 (Ala.Cr.App. 1979), affirmed,383 So.2d 564 (Ala.), cert. denied, 449 U.S. 995, 101 S.Ct. 534,66 L.Ed.2d 293 (1980), and should not be employed as a "fishing expedition," Ex parte Darring, 242 Ala. 621, 624, 7 So.2d 564,566 (1942).
 "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise. The leading case in this Court interpreting this standard is Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). This case recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, id., at 220, 71 S.Ct. 675 [at 679]; (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials, ibid. . . . [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably *Page 864 
to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'
". . . .
 "Enforcement of a pretrial subpoena duces tecum
must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues."
United States v. Nixon, 418 U.S. 683, 69899, 702,94 S.Ct. 3090, 3103-04, 41 L.Ed.2d 1039 (1974) (footnotes omitted) (emphasis in original).
Rules 18.1(c)(1) and 18.1(e), A.R.Crim.P. Temp., would be meaningless if a defendant had an absolute right to discover and obtain the reports of law enforcement agents and agencies through the use of a subpoena duces tecum.
Furthermore, the actual subpoenas duces tecum are not contained in the record on appeal. In the absence of an affidavit of necessity and materiality, a subpoena duces tecum requested at or before trial cannot be sustained. Ex parteThackston, 275 Ala. 424, 427, 155 So.2d 526, 529 (1963).
We find that the trial court's refusal to enforce the defendant's subpoenas duces tecum did not violate the defendant's right "to have compulsory process for obtaining witnesses in his favor" as provided in Art. I, § 6, of the Constitution of Alabama 1901 or the Sixth Amendment to the Constitution of the United States. See generally, C. Gamble,McElroy's Alabama Evidence § 337.03 and § 338.01 (3d ed. 1977). "[T]he right to compulsory process may properly be denied where the evidence expected to be presented by the witness is not material and relevant and favorable to [the] accused." 22A C.J.S. Criminal Law § 473 (1989) (footnotes omitted). "In order to show a violation of defendant's compulsory process rights due to the absence of a particular witness, defendant must show some reasonable basis to believe that [the] witness would testify to material and favorable facts." Id. "[T]he right to compel the attendance of witnesses is not without limitation, such as the requirement that the prospective witness' testimony would be material and competent." C. Torcia, 2 Wharton'sCriminal Evidence § 462 (14th ed. 1986).
Here, the trial court preserved the defendant's right to compulsory process by ruling that "if an officer testifies, then the defendant is going to have the opportunity to look at his police report and I am going to give the defendant a reasonable opportunity to review it before he begins his cross-examination." See United States v. Carter, 613 F.2d 256,261 (10th Cir. 1979), cert. denied, 449 U.S. 822, 101 S.Ct. 81,66 L.Ed.2d 24 (1980) ("The Jencks Act[1] protects Government files from unnecessary and vexatious 'fishing expeditions' by defendants. . . . At the same time the Act assures defendants their Sixth Amendment rights to confront their accusers by compelling the Government to produce 'statements' that may be useful for impeachment of Government witnesses.") (footnote added).
 II.
The defendant argues that the State failed to lay a proper predicate for the admission of the defendant's tape-recorded confession.
We find that the admission into evidence of the tape recording does not constitute reversible error despite the fact that the predicate for the admission of the tape recording is not as orderly, proper, and complete as it should have been. The proper predicate for the admission of a tape recording is found in McElroy at § 123.02.
Before the recording was played for the jury, the police officer who made the tape recording established the voluntariness of the statement, identified the people present when the recording was made, and identified the tape recording introduced into evidence as the same recording he had made. *Page 865 
However, the tape recording was not properly authenticated until after the tape had been played for the jury when the officer testified that the tape recording that he had just heard constituted exactly what transpired the night he questioned the defendant. "If evidence is admitted without required preliminary proof, if followed by such proof or predicate, the error is cured." Lockett v. State, 218 Ala. 40,43, 117 So. 457, 459 (1928).
"[T]he failure of the State to prove that the recording device used to record the conversation was capable of taking testimony [is] not error where a law enforcement officer testified that after his . . . conversation with the defendant he listened to the recording and found that it accurately and substantially reflected the conversation in which he participated." Watson v. State, 398 So.2d 320, 326 (Ala.Cr.App. 1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied,452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
 "Although the preferred practice is for the government to produce evidence regarding the competence of the tape machine operator, fidelity of the equipment, the absence of alterations to the tape and the identity of the speakers, the trial court has broad discretion to allow tapes into evidence without such a showing so long as there is independent evidence of accuracy. United States v. Richardson, 764 F.2d 1514, 1523-24
(11th Cir. 1985)."
United States v. Reed, 887 F.2d 1398, 1405 (11th Cir. 1989), cert. denied, __________ U.S. __________, 110 S.Ct. 1136,107 L.Ed.2d 1041 (1990). In this case, the officer's testimony that the recording constituted exactly what transpired during his questioning of the defendant was adequate independent evidence of the accuracy of the recording.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The Jencks Act, 18 U.S.C.A. § 3500 (West 1985), essentially prohibits the production or discovery of a statement or report of a government witness until after the witness has testified at trial. See, Annot., 5 A.L.R.3d 763 (1966).