LONG, Presiding Judge.
The petitioners, Jerry T. Fitch, Sr., Jerry T. Fitch, Jr., and Harry G. Edwards, filed this petition for a writ of mandamus directing Judge James Moore, circuit judge for the twenty-fourth judicial circuit, to quash the subpoenas duces tecum issued to them by the district attorney’s office for Pickens County.[1]
The petitioners were indicted for violating the competitive bid law, using their offices for personal financial gain, and theft of property. Petitioner Fitch, Sr., was a county commissioner for Pickens County and petitioner Edwards was employed by the County as a road foreman. The district attorney for Pickens County issued subpoenas duces te-cum for the three petitioners, directing them to deliver their personal bank records to the district attorney’s office. The petitioners moved to quash the subpoenas. After a hearing, Fitch, Sr., and Edward’s motions were denied and the court directed the petitioners to produce their bank records within 14 days. No ruling was made on Fitch, Jr.’s motion. The trial is scheduled to begin on November 17, 1997. This Court granted a stay on the production of the bank records until we issued a ruling on this mandamus.[2]
Initially, we must determine whether mandamus is the appropriate method by which to review Judge Moore’s denial of the motions to quash the subpoenas. As the Alabama Supreme Court stated in Ex parte Thackston, 275 Ala. 424, 426, 155 So.2d 526, 528 (1963):
“The first question presented for our consideration is whether or not mandamus is the appropriate remedy in the instant case. We are of the opinion that it is. It is true, as respondent insists, that if the matter complained of can ultimately be presented to the appellate court through the medium of appeal from a final decree, mandamus will not ordinarily be granted. Ex parte Little, 266 Ala. 161, 95 So.2d 269; Ex parte Jones, 246 Ala. 433, 20 So.2d 859; Koonce v. Arnold, 244 Ala. 513, 14 So.2d 512. However, this court has reviewed the issuance of a subpoena duces tecum, both as to parties and non-parties, or witnesses, on a petition for mandamus. Ex parte Anniston Personal Loans, Inc., 266 Ala. 356, 96 So.2d 627; Ex parte Hart, 240 Ala. 642, 200 So. 783.”
(Emphasis added.)
Judge Moore, in his order denying the motions, stated:
“It is undisputed that the banking records exist (the district attorney has obtained copies of the records from -the bank and requests the originals from defendants as a portion of the bank records are illegible) and it is further undisputed that defendants have possession of the requested documents. The Fifth Amendment grants immunity from compelled testimonial self-incrimination. These documents are clearly ‘voluntarily prepared personal papers’ and the defendants were not compelled to issue these checks but produced them upon evaluation of a personal need to engage in financial transactions. Therefore, neither the contents of the banking records nor the act of producing the checks constitute self-compelled incrimination warranting the protection of the Fifth Amendment, see In Re: Grand Jury Subpoena Duces Tecum, 782 F.Supp. 1518 (1992).”
(Emphasis in original.)
I.
The petitioners initially contend that the trial court abused its discretion in not quashing the subpoenas because there is no statute or rule in Alabama that allows a district attorney to issue a subpoena duces tecum to a defendant in a criminal case. *875 184(18), Code of Alabama 1975, which provides:
*874 “The authority of a district attorney to issue subpoenas is found in § 12-17-
*875 “ ‘It is the duty of every district attorney and assistant district attorney, within the circuit, county or other territory for which he is elected or appointed:
[[Image here]]
“ ‘(18) To, at any time the grand jury is not in session, issue subpoenas to persons to come before them, and they shall have power to administer oaths to said persons and examine them as to any violation of the criminal laws of the state.’
“Also, Rule 17.1(c)(2), A.R.Crim.P., provides:
“ ‘At any time the grand jury is not in session, the district attorney shall issue subpoenas for any witnesses the district attorney may require to come before the district attorney for examination under oath administered by the district attorney as to any violations of the laws, of the State of Alabama; if the matter being investigated is not before the grand jury, the district attorney shall have authority to issue such subpoenas when the grand jury is in session.’
“See also Ex parte Clark, 630 So.2d 493, 499-500 (Ala.Crim.App.1993). It does not appear that the district attorney had the power to issue the subpoena in this case under either § 12-17-184(18) or under Rule 17.1, because neither expert who was subpoenaed was being summoned to come before the district attorney for examination. Compare Ala.Code, § 12-21-245 (‘The district attorney also has authority to issue subpoenas for-witnesses on the part of the state, to appear either before the grand jury or before any court in his circuit’) (emphasis added).”'
Brown v. State, 686 So.2d 385, 405-06 (Ala.Cr.App.1995), aff'd, 686 So.2d 409 (Ala.1996).
Rule 17.3, Ala.R.Crim.P., governs the issuance of subpoenas duces tecum.[3] It is clear from the wording of Rule 17.3 that that rule relates to the issuance of'a subpoenas duces tecum to nonparties. Rule 17.3(b) states -in part: “Upon their production, the court inky permit the parties and their attorneys to inspect them, or portions thereof.” (Emphasis added.) Cf. Thackston, 275 Ala. at 427, 155 So.2d at 529, construing Title 7, § 426, Code of Alabama 1940, which dealt with the issuance of subpoenas duces tecum for the production of documents, and holding that it applied to “persons not parties to the action.”
The state contends in its answer 'that the subpoenas are duly authorized by Rules 17.1 and 17.3, Ala.R.Crim.P., because they do not involve “parties.” They contend that each subpoena clearly shows that it was issued[1] for a codefendant’s ease. However, the petitioners assert, and exhibits support their assertion, that the cases involving the three petitioners have been consolidated for purposes of trial. Clearly, each is now a party to the criminal action. The state’s assertion on this ground has no merit.
The district attorney had no[1] authority to issue the subpoenas in this case. It is clear from the subpoenas, which ordered the petitioners to “deliver the following records to the District Attorney’s Office,” that the subpoenas were issued strictly for'purposes of obtaining the documents. The law does not sanction such action. Brown, 686 So.2d at 406. In fact, the trial court stated in its order denying the motion to quash that “the district attorney has obtained copies of the records from the bank and requests the originals from defendants as a portion of the bank records are illegible.” As this Court stated in Sale v. State, 570 So.2d 862, 863 (Ala.Cr.App.1990):
. “It appears to this Court that the defendant was seeking to use the subpoenas duces tecum as a method of discovery. In Alabama, a subpoena duces tecum does not ‘embrace[] discovery as one of its purposes,’ Ex parte Anniston Personal Loans, Inc., 266 Ala. 356, 359, 96 So.2d 627, 630 (1957); Williams v. State, 383 So.2d 547, *876 559 (Ala.Cr.App.1979), affirmed, 388 So.2d 564 (Ala.), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980), and should not be employed as a ‘fishing expedition,’ Ex parte Darting, 242 Ala. 621, 624, 7 So.2d 564, 566 (1942).”
The trial court erred in not quashing the subpoenas on this ground.
II.
The petitioners further argue that even if the subpoenas were lawfully issued they should still be quashed because their Fifth Amendment rights are being violated. The Fifth Amendment to the United States Constitution states:
“No person shall be held to answer for a capital, or otherwise infamous crime unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a imtness against himself, nor be deprived of life, liberty, pr property, without due process of law; nor shall private property be taken for public use, without just compensation.”
(Emphasis added.) This same protection is afforded by the Alabama Constitution. Art. I, § 6, Alabama Constitution of 1901.
The United States Supreme Court in 1886 first articulated the significance of compelling an accused to produce evidence that would ultimately be used against him. In Boyd v. United States, 116 U.S. 616, 630-32, 6 S.Ct. 524, 532-33, 29 L.Ed. 746 (1886), the United States Supreme Court stated:
“The views of the first congress on the question of compelling a man to produce evidence against himself may be inferred from a remarkable section of the judiciary act of 1789. The 15th section of that act introduced a great improvement in the law of procedure. The substance of it is found in § 724 of the Revised Statutes, and the section as originally enacted is as follows, to wit:
“ ‘All the said courts of the United States shall have power in the trial of actions at law, on motion and due notice thereof being given, to require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery; and if a plaintiff shall fail to comply with such order to produce books or writings, it shall be lawful for the courts respectively, on motion, to give the like judgment for the defendant as in cases' of nonsuit; and if a defendant shall fail to comply with such order to produce books or writings, it shall be lawful for the courts respectively, on motion as aforesaid, to give judgment against him or her by default.’
“The restriction of this proceeding to ‘cases and under circumstances where they [the parties] might be compelled to produce the same [books or writings] by the ordinary rules of proceeding in chancery,’ shows the wisdom of the Congress of 1789. The court of chancery had for generations been weighing and balancing the rules to be observed in granting discovery on bills filed for that purpose, in the endeavor to fix upon such as would best secure the ends of justice. To go beyond the point to which that court had gone may well have been thought hazardous. Now it is elementary knowledge, that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict the ■ party of a crime, or to forfeit his property. And any compulsory discovery by extorting the party’s oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom. ”
(First emphasis supplied in Boyd; second emphasis added here.)
*877 The United States Supreme Court’s ruling in Boyd continues to be cited today. The Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), citing Boyd, noted that the privilege does not apply solely to verbal testimony. The Court stated:
“It is clear that the protection of the privilege reaches an accused’s communications, whatever form they'might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one’s papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.”
384 U.S. at 763-64, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.
The Schmerber Court, quoting Miranda v. Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966), explained the importance of the privilege when it stated:
“‘[T]he constitutional foundation underlying the privilege is the respect a government — state or federal — must accord to the dignity and integrity of its citizens. To maintain a “fair state-individual balance,” to require the government “to shoulder the entire load,” ... to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.’ ”
384 U.S. at 762, 86 S.Ct. at 1831, 16 L.Ed.2d at 915:
The privilege as first discussed by the United States Supreme Court in 1886 in Boyd has been modified. Johnson v. United States, 228 U.S. 457, 458, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913) (“[a] party is privileged from producing the evidence but not from its production”); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (the Court held! that no Fifth Amendment privilege was violated when an informant testified as to the contents of his conversation with the defendant because the statements made to, the informant were voluntary and no compulsion was present); Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); and Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (the privilege is a personal right that adheres to the person — not the contents of the information; — and when other parties are ordered to surrender personal papers that were prepared by the accused and delivered to his attorney or accountant there is no “personal compulsion” of the defendant; “there was no enforced communications of any kind from any accused or potential accused”).
The United States Supreme Court, in United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), citing prior case-law, addressed the issue whether service of a subpoena duces tecum seeking business records during a grand jury investigation violated the witnesses’' Fifth Amendment protection. The Court stated:
“Although the contents of a document may not be privileged, the act of producing the document may be.... A government subpoena compels the holder of the document to perform an act that may have testimonial aspects' and an incriminating effect. As we noted in Fisher [v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ]:
“ ‘Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer’s belief that the papers are those described in the subpoena. Curcio v. United States, 354 U.S. 118, 125 [77 S.Ct. 1145, 1150,1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both “testimonial” and “incriminating” for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their res *878 olution may instead depend on the facts and circumstances of particular cases or classes thereof.’[425 U.S. at 410, 96 S.Ct. at 1581.]
“In Fisher, the Court explored the effect that the act of production would have on the taxpayer and determined that the act of production would have only minimal testimonial value and would not operate to incriminate the taxpayer. Unlike the Court in Fisher, we have the explicit finding of the District Court that the act of producing the documents would involve testimonial self-incrimination. The District Court’s finding essentially rests on its determination of factual issues. See United States v. Nixon, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974). Therefore, we will not overturn that finding unless it has no support in the record. Ibid.”
465 U.S. at 612-14, 104 S.Ct. at 1242-43, 79 L.Ed.2d at 560-61.
According to Doe, the focus is on whether the production of the documents involves “testimonial self-incrimination.” However, the petitioners have made no showing in the petition for the writ of mandamus or in the motion to quash that the documents would incriminate them. Mandamus is a drastic and extraordinary remedy and the burden of proof is on the petitioner. State v. Wilson, 601 So.2d 423 (Ala.1992). The petitioners have failed to meet their burden as to this contention.
For the reasons stated in Part I of this opinion, the subpoenas are due to be quashed as to petitioners Jerry T. Fitch, Sr., and Harry G. Edwards.
PETITION GRANTED AS TO PETITIONERS FITCH, SR., AND EDWARDS.
All the judges concur.

. This mandamus was filed on behalf of all three petitioners; however, the trial court never ruled on Jerry T. Fitch, Jr.'s motion to quash the subpoena issued to him. Thus, the correctness of the trial court’s ruling on his motion is not properly before this Court at this time.

. The petitioners have already delivered their business records to the district attorney. This mandamus concerns only their personal bank records.

. Rule 17.3(b) states:
"The court may direct that books, papers, documents, or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence. Upon their production, the court may permit the parties and their attorneys to inspect them, or portions thereof.”